Weygandt, C. J.
Each of the four policies contains the following provisions:
“Appraisal. In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire: and failing for fifteen days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall deter *239 mine the amount of actual cash value and loss. Each appraiser shall he paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally. * * *
“Suit. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.”
The parties were unable to agree on the amount of the loss. Acting under thé appraisal clause, the plaintiff made a written demand on the defendants for an appraisal, and he notified them of the appraiser he had selected. The defendants ignored the notice. After waiting the stipulated period of twenty days, the plaintiff asked the defendants the name of the appraiser they had chosen. They informed the plaintiff that they had selected none and would take no such action. The plaintiff then waited the further required period of fifteen days before filing his motion for the appointment of an umpire by the Court of Probate. After the umpire was appointed, he and the plaintiff’s appraiser duly made an award. Subsequently an action thereon was instituted in the Court of Common Pleas and later removed to the federal trial court.
The defendants in the instant case contend that the appraisal provisions are binding on the plaintiff insured but not on themselves as insurers. They urge that the provisions are revocable by themselves but not by the plaintiff insured.
The above quoted language of the policies is in part that “in case the insured and this company shall fail to agree as to the actual cash value or the amount of the loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within *240 twenty days of such demand.” (Italics supplied.) This provision is not an involved one, the words are simple, and the meaning is clear. Appraisers are to be selected on the demand of either party. In none of the policies is there the slightest intimation that the selection is to be made on the demand of the insurer and not on the demand of the insured. If this were the import of the provision, there could be no excuse for the use of the word ‘ ‘ either. ’ ’
. This view is sustained by the succeeding word “each.” There is no suggestion that the insured alone shall select an appraiser on demand. As indicated by Ballentine’s Law Dictionary, the. obvious meaning of the word “each” is “every one of the two or more comprising the whole.”
Nor is there doubt about the use of the next succeeding word “shall.” It clearly is employed in its ordinary mandatory sense. Furthermore, there is nothing in the context to warrant an inference that the word is used in a mandatory sense as to the insured alone and not as to the insurer. The provisions are not revocable by either.
Hence, unless these words are held to signify the exact opposite of their obvious meaning, the appraisers must be selected when demanded by the insured or by the insurer.
Many decisions are cited in the briefs for the purpose of assisting in the interpretation of these appraisal provisions. However, it is not necessary to interpret language that is simple and unambiguous. The rule with reference to such appraisal provisions is summarized as follows in 45 Corpus Juris Secundum, 1353, Section 1110:
“Their purpose is to provide a plain, speedy, inexpensive and just determination of the extent of the loss, and insured has the right to have the amount of *241 the loss settled as provided in the arbitration clause of his policy even though insurer denies liability or refuses to participate in the arbitration. The clause does not require the parties to do anything but appoint their appraisers, notify them and hand them the policy. ’ ’
In the case of Fire Association of Philadelphia v. Agresta, 115 Ohio St., 426, 154 N. E., 723, a different question was involved but the policy contained provisions similar to those in the present policies. In the discussion in the opinion, it was observed that the provisions were applicable alike to both the insurer and the insured.
The defendants insist further that if they refuse to select an appraiser, the plaintiff has no recourse except to file suits on his policies.
This is equivalent to telling the plaintiff that, although he paid a premium for policies containing the advantage of the appraisal provisions, he in fact received nothing therefor, and that the sole result of the insertion of the appraisal provisions in the policies was that the defendants gave themselves the advantageous right to compel the plaintiff to select an appraiser before he could sue on the policies. Hence, under this theory the appraisal provisions were a detriment instead of a benefit to the plaintiff, inasmuch, as even without the appraisal provisions he, of course, had the right to sue. The plaintiff was led to believe that he was purchasing policies giving him the right to an appraisal and a prompt settlement of his loss so he would have the insurance money with which to reconstruct his building without the expense and delay incident to litigation. Obviously this is a valuable right which he should not be denied. The failure and refusal of the defendants to select an appraiser as required by the provisions of the policies *242 constituted a failure to agree on an umpire just as effectively as if they had selected an appraiser and instructed him not to agree on an umpire. Under these circumstances the plaintiff was authorized to request the court to select such umpire.
That this view of the policy provisions is consistent with the legislative policy of this state is demonstrated by the provisions of Section 12148-1 et seq., General Code, to the effect that such arbitration provisions in a written contract “shall be valid, irrevocable and enforceable.” Section 12148-4, General Code, reads as follows:
“If, in the agreement, provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or an umpire, or in filling a vacancy, then upon the application of either party to the controversy the Court of Common Pleas in and for the county in which the arbitration is to be held shall, within fifteen (15) days after such application is made, designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and, unless otherwise provided in the agreement, the arbitration shall be by a single arbitrator. ’ ’
It is a further contention of the defendants that the appraisal provisions are separate and not a part of the insurance policies. A study of the policies discloses no basis whatsoever for this view. The appraisal provisions are an integral part of the body of each policy precisely the same as every other para *243 graph. Were there doubt as to this, the elementary rale of construction would require that the ambiguity be resolved in favor of the plaintiff and against the defendants, since the language is that of the defendant insurers.
Like the lower courts, this court can discover no reason for holding the plaintiff to the agreement but excusing the defendants from their obligations under the plain, inescapable language they themselves chose to use when they sold the policies to the plaintiff. The Court of Probate was not in error in appointing an umpire to serve in conformity with the provisions of the policies.

Judgment affirmed.

Middleton, Taft, Zimmerman and Stewart, JJ., concur.
Matthias and Hart, JJ., dissent.